**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Thomas W. MARTIN, III and Eva Joe
Stancil, Defendants-Appellees.**

No. 77–3453.

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1979.

J. R. Brooks, U. S. Atty., Bill L. Barnett, Dayle E. Powell, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellant.

Fred A. Erben, Birmingham, Ala., for defendants-appellees.

1. The federal Magistrate's findings of fact were accepted by the District Court which made some additional findings. The parties to this appeal have accepted and substantial evidence in the record supports them. *See* Brief of Appellant at 2–5; Brief of Appellee at 2–3. We disagree only with legal conclusions of the District Court.

2. The federal Magistrate and the District Court both concluded that the underlying affidavit amply supported the issuance of the search warrant. There is no question but that the search warrant was valid. The sole issue raised and our sole appellate concern is whether the manner of execution of the warrant requires suppression in the federal trial of Appellees. The Affidavit read as follows:

DISTRICT COURT OF JEFFERSON COUNTY

STATE OF ALABAMA

AFFIDAVIT FOR<br>SEARCH WARRANT

---

Before me, Judge of the District Court of Jefferson County, personally appeared <u>J. Cameron Guy, Jr.</u>

Before COLEMAN, GEE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal presents a somewhat novel question of Fourth Amendment law. We must determine whether evidence seized by State officers under a State warrant issued to them by a State court is inadmissible in a Federal prosecution as a result of the State officers' failure to comply with a requirement of State law. We reverse in part and affirm in part the District Court's decision to suppress the evidence.

I.

The facts are not in dispute.[1]

On August 18, 1977, Sergeant J. Cameron Guy of the Birmingham Police Department appeared before a State judge of the District Court of Jefferson County, Alabama and executed an Affidavit requesting a search warrant.[2] On the basis of this Affidavit, a State search warrant was issued directing any lawful officer of the County who, after being duly sworn, upon his oath disposes and says as follows:

He is a Sergeant with the Birmingham Police Department and has the following information.

1. On the 18th day of August, 1977 your affiant met with a confidential reliable informant who has given information in the past that has led to narcotic arrests with subsequent convictions for said arrests.

2. This reliable informant stated to me that within the past forty-eight (48) hours he had been present at 2408 Panorama Terrace, and while present at this address observed a quantity of marihuana in the possession of a white male known to him as "Chuck Martin", and a white female known as "Eva Joe Stancil." While present at this address the afore mentioned informant stated he observed "Chuck" and "Eva Joe" sell marihuana on two different occasions on this date. This informant is familiar with the use and appearance of marihuana and has in fact, purchased marihuana for your affiant on previous occasions.

This residence is located in the Birmingham Division of Jefferson County, Alabama.

Subscribed and sworn before me this <u>18th</u> day of <u>August</u>, 1977.

<u>S/ Jack Martin</u> <u>S/ J. Cameron Guy, Jr.</u>

or State to search an apartment located outside the corporate limits of Birmingham, Alabama.[3] The search warrant was not directed to an officer of the Birmingham Police Department, a municipal law enforcement agency. The search warrant was executed by Sergeant Guy and others on the same day it was issued. Sergeant Guy was accompanied by two federal agents of the Drug Enforcement Agency and two additional officers of the Birmingham Police Department. Also present during the search were two Deputy Sheriffs from Jefferson County. At Sergeant Guy's request, the Deputies participated in the overall execution of the warrant. They helped secure the outside of the premises, and remained with the Appellees in one room of the apartment while the other law enforcement officers performed the physical search. The law enforcement officers executing the warrant found approximately fourteen pounds of marihuana, in various places inside the premises. The marihuana, several documents, a cassette tape recording, and a locked safe were seized. The safe was taken to the office of the Drug Enforcement Agency where it was opened in the presence of the federal and municipal officers, without the Deputy Sheriffs being present. To this extent, the search was not complete when the Deputy Sheriffs left the premises. The contents of the safe revealed approximately one hundred and thirty-eight grams of cocaine. There is no question that the search both on the premises and at the safe opening was conducted beyond the jurisdiction of the City of Birmingham and within the jurisdiction of Jefferson County. Sergeant Guy made the return on the search warrant in the State District Court of Jefferson County. The contraband was eventually turned over to federal officers. Our inquiry relates only to the marihuana and the safe.

On September 8, 1977, Appellees were indicted on three counts for conspiring to distribute cocaine, possessing cocaine with intent to distribute, and possessing marihuana with intent to distribute. 18 U.S.C.A. § 2; 21 U.S.C.A. § 841(a)(1). Appellees filed a motion to suppress the controlled substances seized during the search which was referred to a Magistrate. The Magistrate recommended, after a hearing, that the motion to suppress be denied.[4]

The District Court rejected the Magistrate's recommendation. The District Court concluded that Alabama law authorized the execution of a search warrant "only by a sheriff, a deputy sheriff, a constable or some other person acting at the request of one of the aforementioned and in the presence of one of those persons." Since the District Court also concluded that Sergeant Guy did not satisfy any of these requirements, the evidence was suppressed. From

---

**3.** The search warrant read as follows:

DISTRICT COURT OF JEFFERSON COUNTY

STATE OF ALABAMA SEARCH WARRANT

TO: ANY LAWFUL OFFICER OF SAID COUNTY AND SAID STATE:

Proof by affidavit having this day been made before me as Judge of the District Court of Jefferson County that there is probable cause for believing that

Marihuana is presently located on or about the premises located at 2408 Panorama Terrace, Jefferson County, Alabama. Said premises being located in the Birmingham Division of Jefferson County, Alabama, the residence of Chuck Martin and Eva Jo Stancil.

You are therefore commanded to make, in the daytime, an immediate search of the premises described above, a better description of which is not available, for the above described property,

and if you find the same or any part thereof to seize the same and hold it until further order from the District Court of Jefferson County. And you are hereby commanded to make a return of this writ within ten days as required by law.

Dated, this the 18th day of August, 1977.

 S/ Jack Martin
 JUDGE, DISTRICT COURT OF JEFFERSON COUNTY

This affidavit on which this search warrant is based being positive that the articles as described are presently on the premises to be searched, this warrant may be executed at any time of the day or night.

Dated, this the ____ day of _____, 19__.

 JUDGE, DISTRICT COURT OF JEFFERSON COUNTY

**4.** *See* note 8, *infra*.

the granting of Appellees' motion to suppress, the Government brings this appeal. 18 U.S.C.A. § 3731.

■ Our own analysis begins with a review of Alabama law. In Title 15, section 5–1, the Code of Alabama defines a search warrant as "an order in writing in the name of the state signed by a judge, or by a magistrate authorized by law to issue search warrants, *and directed to the sheriff or to any constable of the county, commanding him to search* for personal property and bring it before the court issuing the warrant." Ala. Code tit. 15, § 5–1 (1975) (emphasis added). The requirement that a search warrant be directed to a county law enforcement officer is twice more repeated in the Alabama statutes. The issuance of a search warrant is governed by Title 15, section 5–5 of the Alabama Code: "If the judge or magistrate is satisfied of the existence of the grounds of the application or that there is probable ground to believe their existence, he must issue a search warrant signed by him *and directed to the sheriff or to any constable of the county, commanding him forthwith to search* the person or place named for the property specified and to bring it before the court issuing the warrant." Ala. Code tit. 15, § 5–5 (1975) (emphasis added). Title 15, section 5–6 of the Alabama Code provides a form for search warrants which, in pertinent part, reads: *"To the sheriff or any constable* of ......... county." Ala. Code tit. 15, 5–6 (1975) (emphasis added). In addition to these statutory directives, the Alabama Code clearly identifies those who are authorized to execute a search warrant:

"A search warrant may be executed *by any one of the officers to whom it is directed, but by no other person except in aid of such officer* at his request, he being present and acting in its execution." Code tit. 15, § 5–7 (1975) (emphasis added). Thus, the provisions of the Alabama Code which deal specifically with the question limit the issuance and execution of search warrants to county law enforcement officers. The search warrant involved here clearly complies with these requirements as it is directed to "ANY LAWFUL OFFICER OF SAID COUNTY AND SAID STATE." *See note* 3, *supra.* Focusing on the face of this warrant, no issue may be taken with its lawfulness.[5] These statutes authorizing search warrants must be strictly construed. Both the issuance and the execution of warrants must strictly comply with the formalities prescribed by statute, including the specifics of authorization to execute search warrants.[6]

The District Court and all the parties seem to agree that the execution of this search warrant by Sergeant Guy, a municipal officer only, was illegal under Alabama law. Of course, Sergeant Guy was not named on the search warrant[7] and is not generally authorized to execute search warrants under Title 15. As we shall explain, however, we believe that he was acting sufficiently at the requirement of the Deputy Sheriffs to allow the admission of some of the evidence in the federal trial. We do assume that Sergeant Guy had no authority of his own to execute a search warrant under Title 15.[8]

---

5. *See Jones v. State,* 293 Ala. 762, 306 So.2d 45 (1975), *affirming,* 57 Ala.App. 167, 306 So.2d 33 (Ct.Crm.App.1974); *Kelley v. State,* 55 Ala. App. 402, 316 So.2d 233 (Ct.Crm.App.Ala. 1975); *Kennedy v. State,* 39 Ala.App. 588, 106 So.2d 257 (Ct.App.Ala.1958); *Sugar Valley Land Co. v. Johnson,* 17 Ala.App. 409, 85 So. 871 (Ct.App.Ala.1920).

6. *See Jones v. State,* 293 Ala. 762, 306 So.2d 45 (Ala.1975), *affirming,* 57 Ala.App. 167, 306 So.2d 33 (Ct.Crm.App.1974); *In re State ex rel. Attorney General,* 179 Ala. 639, 60 So. 285 (1912); Rep.Ala.Att.Gen. 1919–20 at 501. *Cf.*

*Ott v. State,* 46 So.2d 226 (Ct.App.Ala.1950); *Booth v. State,* 22 Ala.App. 508, 117 So. 492 (Ct.App.Ala.1928).

7. *But see* note 13, *infra.*

8. The District Court rejected the theory of the Magistrate that Ala. Code tit. 20 § 2–93 expanded the authority of municipal police officers to execute search warrants. Here the warrant was not addressed to Sergeant Guy. *See* note 3, *supra.* There is no testimony at the suppression hearing which indicates that Sergeant Guy even pretended to act pursuant to Title 20. Since the issue has not been briefed

This assumption begins our analysis of admissibility in the federal court.

 This was not a federal search warrant issued by a state court.[9] Here, the search warrant was issued by a State judge pursuant to State law and was directed to a State officer. This was a State search warrant. Nevertheless, we are constrained by precedent to conclude that this was a federal search in its execution.

As we have noted, two federal agents of the Drug Enforcement Agency were invited to go along with Sergeant Guy. They met with the Deputy Sheriffs along the way and participated in the execution of this search warrant. The safe was removed to their office and opened. The contraband was eventually turned over to their custody. Federal charges ultimately were brought against Appellees. The Supreme Court has not directly addressed this federal/state cooperation issue since its decisions in *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("Silver Platter" Doctrine struck down) and *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (exclusionary rule applied in state criminal prosecutions). However, this Court has had occasion to explain when the involvement of federal officers is sufficient to render the execution of the warrant a "federal search:"

The crux of that doctrine is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter. The decisive factor . . . is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it. Where there is participation on the part of federal officers it is not necessary to consider what would be the result if the search had been conducted entirely by State officers.

*Navarro v. United States,* 400 F.2d 315, 317 (5th Cir. 1968), *quoting Lustig v. United States,* 338 U.S. 74, 78–79, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). Here the agents of the Drug Enforcement Agency participated in the execution of this warrant in their capacity as federal agents upon the possibility that something would be disclosed of official interest. This degree of federal involvement was more than sufficient to constitute this a federal search. Since this was a federal search then federal standards apply to its execution.[10]

---

or argued on appeal, we deem it abandoned by the Government.

**9.** Fed.R.Crim.P. 41(a) provides:
 (a) Authority to Issue Warrant.
 A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property is located, upon request of a federal law enforcement officer or an attorney for the government.
 *See generally, e. g., United State v. Hanson,* 469 F.2d 1375 (5th Cir. 1972); *United States v. Coronna,* 420 F.2d 1091 (5th Cir. 1970); *Navarro v. United States,* 400 F.2d 314 (5th Cir.), *after remand,* 429 F.2d 928 (5th Cir. 1970); *United States v. Perez,* 375 F.Supp. 332 (W.D. Tex.1974); *aff'd,* 559 F.2d 28 (5th Cir. 1977).

**10.** *See generally Cady v. Dombrowski,* 413 U.S. 433, 449, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Sibron v. New York,* 392 U.S. 40, 61, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Cooper v. Califor-*

*nia,* 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Rios v. United States,* 364 U.S. 253, 260–61, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); *Elkins v. United States,* 364 U.S. 206, 224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *On Lee v. United States,* 343 U.S. 747, 754–55, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); *Gambino v. United States,* 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927); *United States v. Searp,* 586 F.2d 1117 (6th Cir. 1978); *United States v. Turner,* 558 F.2d 46 (2nd Cir. 1977); *United States v. Burke,* 517 F.2d 377 (2d Cir. 1975); *United States v. Harrington,* 504 F.2d 130 (7th Cir. 1974); *United States v. Sturgeon,* 501 F.2d 1270 (8th Cir.), *cert. denied,* 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974); *United ed States v. Olivares,* 496 F.2d 657 (5th Cir. 1974); *United States v. Sellers,* 483 F.2d 37 (5th Cir.), *cert. denied,* 417 U.S. 908, 94 S.Ct.

This is so despite the fact that there was an independent State ground for issuance and execution of the warrant. Still not, every procedural aspect of federal search and seizure law and Fed.R.Crim.P. 41 applies. There is a distinction between a state-court-issued federal warrant, which this was not, and a state-court-issued state warrant executed with the aid of federal officers, which this was. The distinction was made clear in *United States v. Sellers,* 483 F.2d 37, 43 (5th Cir. 1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974):

> If, however, the warrant was issued under authority of state law then every requirement of Rule 41 is not a *sine qua non* to federal court use of the fruits of a search predicated on the warrant, even though federal procurement officials participated in its procuration or execution. The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers.

*See also United States v. Hanson,* 469 F.2d 1375 (5th Cir. 1972).

 Federal law is much the same as Alabama law. Three subsections of Fed.R. Crim.P. 41 embody the requirement that a search warrant be executed by a person to whom it is directed or by some other authorized person. Subsection (a) of Rule 41 authorizes issuance of a search warrant only "upon request of a federal law enforcement officer or an attorney for the government." Subsection (c) of Rule 41 reads in part: "The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States." Subsection (h) defines the phrase "federal law enforcement officer" as "any government agent, other than an attorney for the government as defined in Rule 54(c) who is engaged in the enforcement of the criminal laws and is within any category of officers authorized by the Attorney General to request the issuance of a search warrant."[11] These federal requirements are not significantly different from the Alabama law. This especially appears when 18 U.S.C.A. § 3105 is read alone with Rule 41. 18 U.S.C.A. § 3105 reads:

### Persons authorized to serve search warrant

A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

This statute does not confer any substantive authority to execute a search warrant, but was meant to enlarge the common law rule which required that a search warrant be directed only to a particular person and be executed only by that person. Fed.R. Crim.P. 41(c) and other empowering provisions of the United States Code provide the

---

2604, 41 L.Ed.2d 212 (1974); *United States v. Hanson,* 469 F.2d 1375 (5th Cir. 1973); *United States v. Haywood,* 464 F.2d 756 (5th Cir. 1972); *United States v. Coronna,* 420 F.2d 1091 (5th Cir. 1970); *Boyle v. United States,* 395 F.2d 413 (9th Cir. 1968), *cert. denied,* 393 U.S. 1089, 89 S.Ct. 861, 21 L.Ed.2d 782 (1969); *United States v. Scolnick,* 392 F.2d 320 (3d Cir.), *cert. denied sub nom. Brooks v. United States,* 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968); *Waldron v. United States,* 95 U.S.App. D.C. 66, 219 F.2d 37 (1955); *United States v. Townsend,* 394 F.Supp. 736 (E.D.Mich.1975); *United States v. Passero,* 385 F.Supp. 654 (D.Mass.1974). *But see United States v. Bed-*

*ford,* 519 F.2d 650, 654 n. 1 (3d Cir.), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976).

11. Fed.R.Crim.P. 54(c) reads:

'Attorney for the government' means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney and when applicable to cases arising under the laws of Guam means the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein.

substantive authority to conduct a federal search. *See* 18 U.S.C.A.˙ § 3106; *United States v. Sigal*, 341 F.2d 837, 843 n. 13 (3d Cir.) and cases cited, *cert. denied,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Thus, under federal law a search warrant may be executed by (1) the person to whom the warrant is directed; (2) any officer authorized by law to execute search warrants; or (3) some other person aiding a person under (1) or (2) who is present and acting in the execution of the warrant. Furthermore, execution by an unauthorized person would render the search illegal.[12]

■ Therefore, both federal· and state law obviously require that the person executing the search warrant must have authority to do so. Our emphasis is on the *requirement* of authority found in federal law. Still, Alabama law is the *source* for the authority here. In such situations, federal courts still look to state law in the course of the federal determination of admissibility. *See United States v. Dudek,* 530 F.2d 684, 689 (6th Cir.) and cases cited. *See also United States v. Fossler,* 597 F.2d 478 (5th Cir. 1979).

■ Of course, Sergeant Guy was not the person to whom the search warrant was directed; it was directed to "ANY LAWFUL OFFICER OF SAID COUNTY AND SAID STATE." We have assumed that Sergeant Guy was not authorized by Alabama law to execute search warrants by himself. Instead, our holding depends on the third category: execution of a search warrant by someone acting at the direction of someone authorized to execute the search warrant.[13] Both the Alabama statute and the federal statute provide for service of a search warrant by a person not directed to search on the face of the warrant and not otherwise generally authorized to execute search warrants if that person acts in aid of an authorized person at the authorized person's requirement and the authorized person is present and takes part in the execution. *Compare* Ala. Code tit. 15, § 5–1 (1975) *with* 18 U.S.C.A. § 3105. There is no question that the Deputy Sheriffs were authorized persons on the face of the warrant *and* by Alabama law. We conclude that their degree of participation was sufficient to legitimate the participation of Sergeant Guy and the other municipal officers and thus to allow the admission of this evidence.

We have already outlined the events of the search. The record of the suppression hearing furnishes further details of the search. Sergeant Guy called the Sheriff's office because the warrant was to be executed in their jurisdiction. One of the Deputy Sheriffs explained that in past cooperative searches sometimes the municipal officers assumed the initiative and sometimes the deputies assumed the initiative. There were no departmental guidelines for such cooperative searches. When they met with the others before the search, one of the Deputy Sheriffs testified that they were there to assist the Birmingham police officers and the federal agents. When asked what role they played, one of the Deputy Sheriffs candidly admitted that they were there to legitimate the search: "It was our job to be there, and in my judgment that—I mean, I had to be there for the search warrant to be served." Only in this sense were they assisting the municipal and fed-

---

12. *See Dumbra v. United States,* 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032 (1925); *Steele v. United States,* 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761 (1925); *United States v. Hare,* 589 F.2d 1291 (6th Cir. 1979); *United States v. Lee,* 581 F.2d 1173 (6th Cir. 1978); *United States v. Soriano,* 482 F.2d 469 (5th Cir. 1973); *United States v. Cox,* 462 F.2d 1293 (8th Cir. 1972), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1973); *United States v. Sigal,* 341 F.2d 837 (3d Cir.), *cert. denied,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); *Gandreau v. United States,* 300 F. 21 (1st Cir. 1924); *United States v. Miah,* 444 F.Supp. 996 (E.D.Pa.1977);

*United States v. $1,058.00 in United States Currency,* 210 F.Supp. 45· (W.D.Pa.1962); *United States v. Gannon,* 201 F.Supp. 68 (D.Mass. 1961); *United States v. Smith,* 16 F.2d 788 (S.D.Fla.1927); *United States v. Dziadus,* 289 F. 837 (N.D.W.Va.1923).

13. An alternative holding which we note but do not adopt would be that the State Magistrate here knew who would execute the warrant: Sergeant Guy. *Cf. United States v. Soriano,* 482 F.2d 469 (5th Cir. 1973); *United States v. Miah,* 444 F.Supp. 996 (E.D.Pa.1977).

eral officers; they were present to execute the warrant because their presence was required. As the law enforcement officers were driving up to the premises, one of the Appellees was leaving. The Deputy Sheriffs, along with the others, intercepted her and brought her back to the premises. They all entered together. The Deputy Sheriffs secured the Appellees in one room while the other law enforcement personnel searched the remainder of the premises. During the course of the search, one of the Deputy Sheriffs arranged with Sergeant Guy to have him make the return. In response to a question asking who was in charge of the search, Sergeant Guy answered, "I don't think there has ever been any type of procedure of anybody being in charge. I was the person that had secured the warrant. So, that gave me the duty of labelling the evidence, of ascertaining who found what where and being the one that returned it to the Judge for his inspection. *As far as being in charge, it could have been any person in that house.*" While his characterization is not necessarily binding on this Court, we consider it highly relevant to the question we consider.

This then was the true nature of this cooperative law enforcement venture. The Deputy Sheriffs were as much in charge as anyone; no one was designated as leader. They were all there pursuant to the same warrant performing their official duties towards the same goal: the seizure of narcotics. We think this was adequate. The Deputy Sheriffs were present. *See United States v. Sanchez,* 509 F.2d 886 (6th Cir. 1975). Had the deputies been federal officers, the degree of their involvement would have been sufficient for us to characterize the execution of the warrant as a federal search.[14] We are satisfied that they were participating in the execution. In addition, we are content that the municipal police officers were acting at the "requirement" of the Deputy Sheriffs. We are simply not prepared to suppress the fruits of this search on the basis of such artificial techni-

calities as who called whom, who asked whom to go along, who rode in the first car and who was driving, who read the warrant to the Appellees, who searched where, who found what, *et cetera.* This search was a cooperative venture by municipal, county, and federal law enforcement officers. The efforts of the Deputy Sheriffs were as significant as Sergeant Guy's efforts or anyone else's. It is true that Sergeant Guy was not named in the warrant or otherwise generally authorized to execute search warrants; but he was one of those who entered under the warrant with the Deputy Sheriffs to whom the warrant was directed. Accordingly, Sergeant Guy could validly participate. His participation being authorized, we cannot suppress merely because he assumed the initiative in the execution of this search warrant. *See United States v. Hare,* 589 F.2d 1291 (6th Cir. 1979); *United States v. Lee,* 581 F.2d 1173 (6th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 725, 58 L.Ed.2d 707 (1978); *United States v. Jones,* 518 F.2d 384 (7th Cir.), *cert. denied,* 423 U.S. 997, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975); *Palmer v. United States,* 92 U.S. App.D.C. 103, 203 F.2d 66 (1953) and cases cited.

The nearest precedent we have found is *Kirby v. Beto,* 426 F.2d 258 (5th Cir. 1970). There, Dallas police officers served a warrant in Irving, beyond their jurisdiction. This Court adopted the reasoning of the District Court in a *per curiam* opinion. The District Court had held that the Dallas police officers who served the warrant had authority to do so because an Irving police officer had accompanied them on the search and was present in the vicinity of the searched apartment during the execution of the warrant. The District Court had concluded that this was sufficient. The execution of the warrant was deemed proper because of the presence of the Irving police officers; that others unauthorized to execute warrants were present and assisted was deemed immaterial. *See also United*

---

**14.** *See, e. g., United States v. Sturgeon,* 501 F.2d 1270 (8th Cir.), *cert. denied,* 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974); *United*

*States v. Coronna,* 420 F.2d 1091 (5th Cir. 1970); *Navarro v. United States,* 400 F.2d 315 (5th Cir. 1968).

*States v. Bowling,* 351 F.2d 236 (6th Cir. 1965); *United States v. Hogue,* 283 F.Supp. 846 (N.D.Ga.1968).

■ To hold, as we do, that Sergeant Guy was authorized to execute the search warrant at the requirement of the Deputy Sheriffs they being present and acting in its execution, does not approve the admissibility of all the evidence seized under this warrant. The marihuana was seized at the apartment and is admissible under this rationale. The cocaine was found in the safe which had been removed from the premises and taken to the Drug Enforcement Agency office. The safe was not opened at the requirement of the Deputy Sheriffs. Nor was it opened in their presence. Therefore, when the safe was opened, no one present was authorized by Alabama law to execute the search warrant. For Fourth Amendment purposes, the opening of the safe constituted an encroachment upon Appellees' reasonable expectation of privacy wholly separate from and much more intrusive than the initial seizure. There being no search warrant justifying opening the safe by these officers, this was a warrantless search. There being no apparent exigency or other justification for the warrantless conduct, the contents of the safe must be suppressed. *See United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *United States v. Johnson,* 588 F.2d 147, 156–57 (5th Cir. 1979). (Hill, J., concurring).

REVERSED in part; AFFIRMED in part.