[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-14995

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00014 CR-FTM-29-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CARLOS ALBERTO NUNEZ,
HONORATO HERNANDEZ,
NOELVIS HERNANDEZ,
JESUS BARRIOS-FERNANDEZ,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 11, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and FAY, Circuit Judges.

PER CURIAM:

Defendants Carlos Nunez, Honorato Hernandez, Noelvis Hernandez, and

Jesus Barrios-Fernandez were indicted for conspiracy to manufacture and

possession with intent to distribute 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). All Defendants moved to suppress evidence stemming from investigatory vehicle stops. The district court granted suppression, determining that the officer who ordered the stops lacked reasonable suspicion. We reverse.[1]

## **Background**

In February 2004, Detective Petrovich of the Cape Coral Police Department received information from a federal "High Intensity Drug Trafficking Area" agent in Miami that an associate or relative of Jose Nunez might be operating a marijuana grow house in Cape Coral, Florida, at 1915 N.E. 21st Avenue (the "Residence"). While trying to make contact with residents of the house at this address, Petrovich smelled what he believed to be green growing cannabis. Petrovich shared this information with his partner, Detective Richardson, and showed Richardson a drivers licence photo of Defendant Carlos Nunez. Petrovich

---

[1]Pursuant to 18 U.S.C. § 3731 we have jurisdiction to review the district court's order granting suppression. The U.S. Attorney certified to the district court that this appeal was not taken for purpose of delay and that the suppressed evidence is a substantial proof of a fact material to the proceeding.

did not explain how Carlos was connected to Jose Nunez or how Carlos was developed as a suspect.

Richardson was the sole government witness at the suppression hearing. Richardson testified that several days after Petrovich smelled green growing cannabis at the Residence, Petrovich and Richardson executed a search warrant at a different marijuana grow house in Cape Coral, which Petrovich believed was related to the Residence. Petrovich then asked Richardson to observe the Residence while Petrovich obtained a search warrant for the Residence. Richardson testified that Petrovich instructed him to stop any cars leaving the Residence if the cars were loaded with items from the Residence. Later in the same hearing, Richardson testified that Petrovich had told him "if those vehicles leave there and I [Richardson] believe that there's drugs in those vehicles to have them stopped."

When Richardson began surveillance of the Residence around noon, he saw a Jeep Cherokee and Ford pickup truck parked in the driveway. Both of these vehicles had been at the residence on previous days. At about 1:00 p.m., Richardson observed Carlos Nunez carry a black garbage bag out of the Residence, place the bag in the Ford truck, and return inside. Around 2:00 p.m., Defendant Noelvis Hernandez arrived in a green Mercedes and entered the

3

Residence. Richardson later observed three or four men standing behind the Residence, talking and drinking beer. After ten or fifteen minutes, the men returned inside. Shortly after 3:00 p.m., Noelvis Hernandez carried a cardboard box from the Residence to the Mercedes and got in the driver's seat. About ten minutes later, Defendant Jesus Barrios-Fernandez exited the Residence and got in the Mercedes; Noelvis Hernandez and Barrios-Fernandez then drove away. Richardson radioed Sgt. Urraro to stop the Mercedes.

Because Urraro was in an unmarked car, he directed Detective Scheall to make the stop. Richardson continued to observe the Residence. A few minutes later, Defendants Carlos Nunez and Honorato Hernandez exited the house, loaded a lawn mower into the Ford truck, got into the truck, and drove away. Richardson followed and directed a marked vehicle to stop the truck. Neither the Mercedes nor the truck committed a traffic violation before being stopped. Richardson testified that he received notice before the stops that Petrovich had obtained a search warrant for the Residence.

When Richardson approached the stopped truck, he smelled an overwhelming odor of green cannabis. A search of the truck revealed that the black garbage bag contained a total of 7.4 pounds of marijuana. The cardboard box in the Mercedes contained 3.05 pounds of marijuana. Defendants Honorato

4

and Noelvis Hernandez possessed marijuana on their person and made incriminating statements.  Barrios possessed cocaine.  The search warrant for the Residence was executed at approximately 3:25 p.m. (a few minutes after the vehicles were searched) and revealed evidence that the house was used for growing marijuana.

The magistrate judge who conducted the suppression hearing concluded that Richardson had insufficient knowledge to support reasonable suspicion and recommended that all evidence stemming from the investigatory vehicle stops be suppressed.  The district court adopted the magistrate's recommendation to suppress the evidence but clarified that, in reaching its decision, it had considered the collective knowledge of the officers, including Petrovich.  Because we conclude that the facts known by Richardson and Petrovich were sufficient to support reasonable suspicion, we reverse.

## **Discussion**

When reviewing a ruling on a motion to suppress evidence, we  review the district court's factual findings for clear error and its application of the law to these facts de novo.  United States v. Hunter, 291 F.3d 1302, 1305 (11th Cir.

2002).  We construe the facts in the light most favorable to the party prevailing below. United States v. Mikell, 102 F.3d 470, 474 (11th Cir. 1996).

"[L]aw enforcement officers may detain a person briefly for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity. The 'reasonable suspicion' must be more than an 'inchoate and unparticularized suspicion or hunch.'" United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000) (citing Terry v. Ohio, 88 S.Ct. 1868, 1883 (1968)).  Reasonable suspicion is determined from the totality of circumstances and collective knowledge of the officers. United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004).  "[W]hether reasonable suspicion existed at the time [of the investigatory stop] is a question of law to be determined ultimately by judges, not policemen. . . . [T]he question . . . is not whether a specific arresting officer . . . actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify such a search." Hicks v. Moore, 422 F.3d 1246, 1252 (11th Cir. 2005) (citing Evans v. Stephens, 407 F.3d 1272, 1280 n.9 (11th Cir. 2005) (en banc)).

"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the

6

person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Illinois v. Wardlow, 120 S.Ct. 673, 676 (2000). "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Id.

In the present case, Richardson knew that Petrovich had probable cause to believe the Residence was a marijuana grow house and that, therefore, a state judge had signed a search warrant for the Residence. Richardson observed that all Defendants spent at least half an hour in the Residence, which Petrovich had told Richardson smelled like green growing cannabis a few days earlier. In addition, Defendants were not just present at a suspected grow house. Richardson observed Carlos Nunez carry a black trash bag -- capable of concealing marijuana -- from the Residence to the truck and Noelvis Hernandez carry a box -- also capable of concealing marijuana -- from the Residence to the Mercedes. That these containers were removed from a residence for which a law enforcement officer had probable cause to believe was a marijuana grow house -- while the residence was under surveillance and shortly before it was to be searched -- supports a reasonable suspicion that Carlos Nunez and Noelvis Hernandez were involved and

7

were removing marijuana or related contraband from the Residence. The stops were not unreasonable under the circumstances.

The decision of the district court suppressing the evidence obtained from the investigatory stop of Defendants' vehicles is **REVERSED.**